UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **ROBBIE DALE FONTENOT** | * | **CIVIL ACTION NO. 09-1417** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. By decision dated August 5, 1999, Robbie Dale Fontenot, born July 25, 1965, was awarded Social Security Disability Benefits as of February 2, 1998, due to right ankle surgery for a fracture, low back pain, and a right shoulder separation.[1] Pursuant to the continuing disability review process, claimant was found to have no longer been disabled as of June 1, 2004. Following two administrative hearings, the Administrative Law Judge ("ALJ") determined by decision dated April 22, 2008, that claimant's disability had ceased.

The Appeals Council denied claimant's request for review on July 13, 2009. Thereafter, claimant appealed to this Court for judicial relief.

---

[1] The application for supplemental security income benefits was filed on February 24, 1998.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[2]

**(1) Records from Lake Charles Memorial Hospital dated February 13, 2004 to March 11, 2004.** Claimant was seen for an acute seizure due to noncompliance. (Tr. 261). He was prescribed Dilantin.

**(2) Consultative Examination by Dr. John Canterbury dated April 17, 2004.** Claimant complained of neck and back problems, shoulder pain, and seizure disorder. (Tr. 267). He had been having seizures since age 27 and was on medication, but still had an average of one seizure per month. He also complained of occasional headaches. His medications included Clonazepam and Dilantin.

---

[2] Although the undersigned reviewed all of the reports in the record, only those relating to the cessation of benefits are summarized herein.

On examination, claimant ambulated without difficulty. (Tr. 268). He got on and off the examination table and up and out of the chair with no problem. He was able to dress and undress himself.

Claimant did not appear to require an assistive device. Straight leg raising test was negative. (Tr. 269). He took somewhat small steps, but did not appear to have any problems ambulating. Neurological and sensory examinations were normal.

Dr. Canterbury's impression was neck, back, ankle, and knee pain, all apparently related to multiple traumatic injuries, and seizure disorder. (Tr. 270). He opined that claimant was able to sit, stand, and walk, lift moderately heavy objects, hear and speak, and handle objects.

**(3) Residual Functional Capacity ("RFC") Assessment, Mental, dated June 2, 2004**. The medical consultant determined that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 272). He could stand, walk, and sit about six hours in an eight-hour workday. He had unlimited push/pull ability. He could frequently perform all postural activities. He had to avoid even moderate exposure to hazards, such as machinery and heights, due to his seizure disorder.

This decision was affirmed on January 21, 2005. (Tr. 278).

### (4) Records from American Legion Hospital dated September 28, 2004 to June 17, 2005.[3]

Claimant was seen for seizure disorder. (Tr. 452-465). He had missed his doses of seizure medications. (Tr. 453, 456). He was instructed to take Dilantin as prescribed. (Tr. 459).

On April 20, 2005, claimant was seen for back pain after falling off of a ladder. (Tr. 442-50). X-rays showed mild degenerative findings. (Tr. 443). His diagnoses were a minor contusion of the back and exacerbation of chronic pain. (Tr. 451). He was prescribed Ibuprofen. (Tr. 449).

On June 4, 2005, claimant complained of constant chest pain after falling on a tree root. (Tr. 422, 426). X-rays were negative. (Tr. 411, 422, 432). The diagnosis was a chest contusion. (Tr. 428). He was prescribed Toradol and Lorcet 10. (Tr. 421, 427). He returned twice for complaints of severe pain, and was prescribed Lortab. (Tr. 400-417).

---

[3] These records from American Legion Hospital date back to October 10, 1999, and reflect claimant's admissions for facial and ear pain, low back pain, medication withdrawal, left flank pain, chest wall contusions following an automobile accident, sinusitis, heat exhaustion, alcohol intoxication, scalp contusions and abrasions after getting hit on the head with a pool stick, right hand pain, back pain sustained in an altercation, chest contusion after being jumped on, and left eye pain. (Tr. 467-597).

4

**(5) Records from University Medical Center ("UMC") dated May 5, 1999 to September 12, 2006.**[4] On July 11, 2006, claimant complained of back pain and memory loss. (Tr. 601-03). A drug screen was positive for opiates and amphetamines. (Tr. 607). X-rays showed degenerative changes of the dorsal spine. (Tr. 609). He failed to show for his follow up appointment. (Tr. 599).

**(6) Consultative Internal Medicine Examination by Dr. Mark Dawson dated July 20, 2007.** Claimant complained of a herniated disc, seizures, knee problems, and ankle surgery secondary to fractures. (Tr. 622). He smoked half a pack of cigarettes daily, and drank alcohol occasionally. He was not taking any medications.

On examination, claimant was 66 ½ inches tall and weighed 171 pounds. His blood pressure was 120/80. Straight leg raising tests were negative. (Tr. 623). His gait was normal, including toe, heel, and normal walking. Range of motion of all joints and spinal exam were normal.

Dr. Dawson's impression was a history of herniated disc with normal exam, and old ankle injuries, with acceptable range of motion of the ankles which did not impair his gait.

---

[4]These records date back to May 5, 1999 and reflect claimant's right shoulder separation after flipping on a 4-wheeler. (Tr. 611-21).

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Dawson determined that claimant could lift and carry up to 50 pounds continuously and up to 100 pounds occasionally. (Tr. 624). He could sit, stand, and walk without limitations in an eight-hour day. (Tr. 625). He did not require a cane to ambulate.

Claimant could use his hands continuously. (Tr. 626). He could use his feet occasionally. He could perform all postural activities frequently. (Tr. 627). He could tolerate environmental conditions continuously. (Tr. 628). He could perform all activities of daily living. (Tr. 629).

**(7) Claimant's Administrative Hearing Testimony.**[5] At the hearing on March 4, 2008, claimant was 43 years old. (Tr. 680). He testified that he was 5 feet 6 inches tall and weighed about 180 pounds. (Tr. 680-81). He had completed the seventh grade. (Tr. 638). He had past work experience as a roughneck. (Tr. 639).

Claimant did not drive, and had not had a license since the 1980s. (Tr. 639-40, 683-84). He smoked about two packs of cigarettes per week. (Tr. 682). He reported that he drank one or two beers weekly.

---

[5] Another hearing was held on June 13, 2007. (Tr. 632-73). The record was held open for additional information and consultative examination.

6

Claimant stopped working in 1998 after he got hurt on a roughneck job at Falcon Drilling. (Tr. 641-42, 684). He could read very little, did not spell very well, and could do a little arithmetic. (Tr. 683).

As to impairments, claimant testified that he had sustained a shoulder separation, ankle fractures, and a herniated disc. (Tr. 642-43, 685-86). He stated that he had to elevate his feet to alleviate pain and swelling. (Tr. 685). He reported that his shoulder still popped out of place.

Claimant also suffered from seizures, and had had two since the last hearing. (Tr. 645, 697). He stated that he was taking his medications. (Tr. 693). He reported that during his seizures, he became disoriented and sometimes bit his tongue. (Tr. 687).

Regarding activities, claimant stated that he went shopping once a month. (Tr. 689). He said that he visited with his grandmother daily and his parents about two times a month. He lived with his brother.

Claimant did a little yard work using a self-propelled mower during the summer. (Tr. 690). He did some chores, such as washing dishes and folding clothes. (Tr. 691). He was able to dress and groom himself unassisted. He watched television about four to five hours a day, but said that he had trouble focusing. He reported that he slept only three or four hours at night. (Tr. 692).

As to limitations, claimant testified that he could walk for 15 to 20 minutes. (Tr. 693). He could stand for 10 to 15 minutes, and sit for an hour to an hour and a half. He found climbing stairs very difficult.

Claimant reported that he could reach forward with both arms, but overhead with his left only. (Tr. 694). He could lift about 20 pounds. Stooping was difficult, and kneeling and squatting were painful. He was able to hold things when he picked them up. (Tr. 694-95).

Additionally, claimant said that he had difficulty concentrating. (Tr. 695). He thought that he could follow simple one- or two-step instructions, but would need to be reminded if there was a delay. He stated that he had problems dealing with supervisors, coworkers, and members of the general public. He also reported that he did not think he could perform tasks with a time deadline; was bothered by stress, crowds, and noise, and did not have a problem with environmental factors.

**(8) Administrative Hearing Testimony of Wendy Klamm, Vocational Expert ("VE")**. The ALJ asked Ms. Klamm to assume a claimant aged 40 to 43, with seven years of education; the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit six hours out of eight; had limited push/pull ability; had to avoid even moderate exposure to hazards, machinery or heights; could not drive or climb; could reach overhead with the right arm

8

occasionally; was limited to simple one- or two-step tasks; had to work with things rather than people; could have no interaction with the public, and required simple, direct, and concrete supervision. (Tr. 699). In response, the VE opined that such claimant could work as a small products assembler, of which there were 1,500 jobs statewide and 85,700 nationally; garment folder, of which there were 2,675 jobs statewide and 174,100 nationally, and press operator, of which there were 575 jobs statewide and 45,400 nationally. (Tr. 700-01).

When the ALJ modified the hypothetical to limit claimant to standing and walking less than two hours out of an eight-hour day; sitting for six hours out of eight with a sit/stand option approximately every hour; limited pushing/pulling ability; no lifting overhead with the right arm; occasional posturals; avoiding hazards, machinery, or heights; no driving motorized equipment; limitation to to simple one- or two-step tasks; no interaction with the public; working with things rather than people, and requiring simple, direct, and concrete supervision, Ms. Klamm responded that such claimant could do sedentary work. (Tr. 701). This included fishing reel assembler, of which there were 200 jobs statewide and 11,000 nationally, and press clippings cutter and paster, of which there were 1,750 jobs statewide and 144,125 nationally. (Tr. 701-02). When claimant's attorney added to the hypothetical trouble concentrating, remembering, and recalling things

9

more than to a moderate degree, the VE testified that such claimant would not be able to sustain a job. (Tr. 702). Ms. Klamm also answered in response to questioning from claimant's attorney that claimant could not hold any jobs if he suffered from a pain syndrome that would require him to take an hour or two a day to elevate his feet. (Tr. 702-03).

**(9) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred in failing to place the burden on the Commissioner at each step to show that he was no longer disabled. [rec. doc. 13, p. 2]. Specifically, he asserts that the ALJ failed to identify any objective evidence showing medical improvement and failed to identify what changes in his symptoms, signs and laboratory findings substantiated medical improvement.

In the Fifth Circuit, medical improvement must be shown before the Commissioner can halt the payment of benefits in a termination case. *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002). Here, the ALJ found that, based on the opinions of the two consultative examiners, claimant's impairments had not met or medically equaled a listing since June 1, 2004. (Tr. 17-18). She then went through the objective evidence supporting this opinion, noting that claimant was not taking his seizure medications as prescribed. (Tr. 19). The records reflect that claimant was repeatedly noncompliant with his seizure medications. (Tr. 261,

10

453, 456). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Additionally, the ALJ relied on the opinions of Drs. Dawson and Canterbury to find medical improvement. Specifically, she noted that Dr. Dawson's examination revealed that claimant's straight leg raising test was negative, gait was normal, range of motion in all joints was normal, and spine was normal. (Tr. 19). This is supported by Dr. Dawson's report, in which he concluded that claimant had a normal exam and acceptable range of motion of the ankles which did not impair his gait. (Tr. 623).

Further, in the Medical Source Statement of Ability to do Work-Related Activities, Dr. Dawson determined that claimant could lift and carry up to 50 pounds continuously and up to 100 pounds occasionally; sit, stand, and walk without limitations; use his hands continuously; use his feet occasionally; perform all postural activities frequently; tolerate environmental conditions continuously, and perform all activities of daily living. (Tr. 624-29).

The ALJ also relied on Dr. Canterbury's opinion that claimant was not "all that limited." (Tr. 19, 270). On examination, Dr. Canterbury observed that claimant ambulated without difficulty; got on and off the examination table and up

11

and out of the chair with no problem; was able to dress and undress himself; did not appear to require an assistive device; had a negative straight leg test; had no problems ambulating, and had normal neurological and sensory examinations. (Tr. 268-69). He opined that claimant was able to sit, stand, and walk, lift moderately heavy objects, hear and speak, and handle objects. (Tr. 270).

Further, the ALJ relied on the state agency physician's residual physical functional capacity assessment. (Tr. 20. The medical consultant determined that claimant could perform the full range of light work. (Tr. 272-78). This finding was affirmed on January 21, 2005. (Tr. 278).

The medical records support the ALJ's opinion that claimant's condition had improved, and that he was capable of performing a significant number of jobs in the national economy. (Tr. 20-21). Thus, the ALJ's finding that claimant's disability ceased on June 1, 2004, is entitled to deference.

Accordingly, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION***, 79 F.3D 1415 (5TH CIR. 1996).**

Signed October 18, 2010, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE